NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

In re:                          )
                                )
JASPAL DEOL                     )    Case No. 18-23885-C-7
                                )
                    Debtor.     )
_____)    Adv. Pro. 18-02155
                                )
PRABHAKAR GOEL, GOEL FAMILY     )
VENTURES I LP, a Limited        )
Partnership, and ECONERGY, INC.,)
a California Corporation,        )
                                )
                    Plaintiffs, )
v.                              )
                                )
JASPAL DEOL,                    )
                    Defendant.  )
_____)

MEMORANDUM

In this cross-border US-India arbitration dispute the defense counsel captured its essence with his assertion that: "At its core, this case was nothing more than a breach of contract dispute gone wild." The problem is that defendant is the one who "went wild" and dug his own grave.

The applicable California rules of issue preclusion doom the defendant regarding exception to discharge under 11 U.S.C. §§ 523(a)(2) and 523(a)(4). Independent evidence dooms the defendant to exception to discharge under 11 U.S.C. § 523(a)(6).

The Dispute

The dispute between Jaspal Deol on the one hand and Prabhakar Goel and Goel Family Ventures I LP ("GFV") on the other hand involved Loan and Co-Development Agreements for a solar power plant project by their corporation Econergy, Inc., near the

village of Boparai Kalan, District of Ludhiana, State of Punjab, India.

Deol and Goel are California residents, and GFV is a California entity. The agreements were negotiated and executed in California, with an express California choice of law provision. The agreements were construed as a single contract in JAMS Arbitration Case No. 1110016365. The loans and financing occurred primarily in California. Project construction and performance occurred in India.

Pursuant to the agreements, GFV obtained 49% of the shares of Econergy, Inc. Deol retained 51% of the shares. Both Deol and Goel were Directors of Econergy.

During construction, both Deol and Goel were involved in on-site supervision and both traveled between California and Punjab on multiple occasions.

Deol was in control of the solar power project when it was completed and producing power into the electric grid.

At some point, Deol, in effect, froze Goel out, even though Goel was a Director of the corporation and had funded a substantial portion of the construction. Deol rejected GFV's exercise of an option to purchase one-half of the project real estate.

Among other things: Deol without notice to Goel replaced the accountant for the joint project with an accountant answerable only to Deol; did not distribute to Goel, or account to Goel for, project revenues; without notice to Goel filed tax returns for Econergy in California and in India claiming he was the sole owner of the project; and transferred Econergy revenues to

himself.

Procedure

Goel demanded arbitration. Deol counterclaimed. Initial proceedings pursuant to JAMS Comprehensive Arbitration Rules occurred over eleven days in 2016.

The JAMS Arbitrator was a seasoned California jurist, Hon. Robert A. Baines, Retired Judge of the Superior Court. The arbitration decision, which comprises 88 single-spaced pages, bears the indicia of a conventional, fully-litigated lawsuit in a bench trial in which the arbitrator applied basic California law with explanations for each ruling.

The JAMS arbitration decision in favor of Goel for monetary relief of $1,466,564, together with injunctive relief, and monetary relief in favor the Defendant of $787,648, was confirmed by the Santa Clara County California Superior Court.

On Deol's appeal, the California Sixth District Court of Appeal affirmed with an agreed modification reducing the Goel parties' award by $352,309 on a theory of double counting.

The California Supreme Court denied Deol's Petition for Review.

JAMS Arbitration Case No. 1110016365 was resolved by a series of awards:

Partial Final Award. 6/21/2017.
Order Enjoining Actions Undertaken by Jaspal Singh Deol in Violation of Orders Issued in this Proceeding. 8/16/2017.
Further Partial Final Award Determining Value of Jaspal Deol's Interest in Econergy, Inc., and Value of Ludhiana Land. 2/20/2018.
Further Injunctive Orders Directed to Jaspal Singh Deol. 2/20/2018.
Further Injunctive Orders Directed to Jaspal Singh Deol. 2/20/2018. [second order of same date]

Further Partial Final Award. 4/30/2018.
Order on Attorneys' Fees, Costs, and Interest on
   Distributions. 11/16/2018.
Final Award. 11/16/2018.

The JAMS arbitrator noted at the end of the April 30, 2018, Further Partial Final Award, "As of the writing of this Further Partial Award, Deol has not fully complied with the above-described orders. Enforcement through the courts appears needed." Further Partial Award at 65.

Deol filed a chapter 13 case in this Court on June 20, 2018. This Court by order entered October 31, 2018, granted Goel's motion for relief from the automatic stay to permit completion of the JAMS arbitration as to which fees, costs, and interest were not yet resolved.

Following the grant of stay relief, the JAMS Arbitrator entered his determination of fees, costs, and interest and his Final Award November 16, 2018. The award of reasonable attorneys fees was $985,788.72. Costs totaled $232,869.66. The Final Award also included injunctive relief.

The Santa Clara County Superior Court confirmed the JAMS Final Arbitration Award on January 10, 2019. Deol appealed.

The Sixth District Court of Appeal affirmed in a 28-page opinion filed February 10, 2022. Deol petitioned for Supreme Court review.

The California Supreme denied Deol's Petition For Review on May 11, 2022.

The Deol bankruptcy case was converted from chapter 13 to chapter 11 by order entered June 21, 2019. After three years of protracted but fruitless mediation, a chapter 11 trustee was appointed November 2, 2022, thereby ousting Deol from Debtor in

Possession status.

The case was converted to chapter 7 at the recommendation of the chapter 11 trustee effective December 15, 2023.

<u>Adversary Proceeding</u>

In the bankruptcy case, Prabhakar Goel, Goel Family Ventures I LP, and Econergy, Inc. filed a Complaint commencing adversary proceeding 2018-02155 on October 1, 2018. In addition to requesting declarations that the then-incomplete JAMS Arbitration rulings are binding on Deol, the Complaint alleged Deol's debts to them are excepted from discharge on three counts: 11 U.S.C. §§ 523(a)(2) for Actual Fraud; § 523(a)(4) Defalcation in a fiduciary Capacity; and § 523(a)(4) Embezzlement and Larceny.

The evidentiary phase of the trial occurred October 24-25, 2019. At the close of the plaintiff's evidence, a fourth count under § 523(a)(6) Willful and Malicious Injury was added to conform to evidence on a theory of implied consent pursuant to Civil Rule 15(b)(2). Fed. R. Civ. P. 15(b)(2), <u>incorporated by</u> Fed. R. Bankr. P. 7015.

The parties subsequently presented their closing arguments in writing. (Dkts. 52, 54 & 57). They also have filed Proposed Findings of Fact and Conclusions of Law. (Dkts. 198 & 200).

The parties requested that this Court defer decision pending completion of contested arbitration confirmation proceedings in state court, which completion did not occur until the California Supreme Court denied a Petition to Review the order of the Sixth District Court of Appeal.

Thereafter, the parties continued to participate in

1  voluntary mediation discussions with another judge of this court.

2  Those efforts having come to naught, the adversary proceeding is

3  now ripe for decision.

4

5                           <u>Jurisdiction</u>

6      Jurisdiction is founded on 28 U.S.C. § 1334(b). This is a

7  core proceeding that a Bankruptcy Judge may hear and determine.

8  28 U.S.C. § 157(b)(2)(I). To the extent it may ever be determined

9  not to be a core proceeding, the parties are nevertheless agreed

10  it may be heard and determined by a bankruptcy judge.

11

12                             <u>Record</u>

13      As noted the JAMS arbitration award comprising 88 single-

14  spaced pages bears the indicia of a conventional, fully-litigated

15  lawsuit in a bench trial in which the arbitrator applied basic

16  California law with explanations for each ruling.

17      This Court has carefully reviewed the entire award and notes

18  that it stands as admirable and persuasive judicial craftsmanship

19  by a seasoned jurist performing in the same fashion as a trial

20  judge in a bench trial.

21      The arbitration satisfied all aspects of judicial-like

22  adjudicatory procedure as prescribed by JAMS rules. The JAMS

23  comprehensive arbitration rules were applied. Parties could

24  subpoena witnesses and present documentary evidence. Witnesses

25  testified under oath before an impartial arbitrator regarding a

26  single set of facts. The arbitrator adjudicated the dispute in a

27  detailed reasoned decision.

28      The JAMS comprehensive arbitration rules are consistent with

the Restatement(Second) of Judgments, §§ 83(2) & 84(3)(b) (1982).

As described by the JAMS arbitrator,

this was a detailed, convoluted, and hard-fought matter. It involved claims of several million dollars and a battle for control of a corporation and a solar power plant in India. The underlying events spanned several years, and their recounting involved witnesses from the U.S., India, and Spain.

Order on Attorneys Fees, at 7-8.

The Plaintiffs have Proposed Findings of Fact and Conclusions of Law (Dkt. 200), which this Court has carefully reviewed in conjunction with the arbitration record and concludes that it is accurate.

Subject to the comments set forth herein, this Court ADOPTS the Plaintiffs' Proposed Findings of Fact and Conclusions of Law as its own and incorporates them in this decision.

Analysis

The five counts in this adversary proceeding, two of which are subject to issue preclusion, will be addressed in reverse order.

I

Declaratory Judgment Dispute Moot

The Count Four request for a Declaratory Judgment that Deol must obey the rulings of the JAMS arbitrator has been rendered moot by the subsequent entry of a judgment that is now final in all respects under applicable nonbankruptcy law.

The Declaratory Judgment court was pled when the JAMS arbitration was in an interlocutory status before there was a Final Award.

During the pendency of this adversary proceeding: a Final Award was entered; the Final Award was confirmed by a California Superior Court in a manner that elevated the Final Award to the status of a civil judgment; a California Court of Appeal modified the monetary aspect of the Final Award and affirmed the Superior Court in all other respects; and the California Supreme Court denied a Petition for Review.

Accordingly, the JAMS arbitration award has been elevated to the status of a judgment that after full appellate review is now final and enforceable in all respects.

It being beyond cavil that Deol is bound to obey the final judgment, the request for Declaratory Judgment in the Complaint has been overtaken by events and is now MOOT.

II

Issue Preclusion

The Complaint alleged three counts of exception to discharge under 11 U.S.C. § 523(a): Actual Fraud, § 523(a)(2); Defalcation in Fiduciary Capacity, § 523(a)(4); Embezzlement and Larceny, § 523(a)(4).

All three counts are eligible for application of the discretionary doctrine of issue preclusion under California law.

Since the confirmation of the JAMS arbitration award has the status of a judgment, federal courts must, as a matter of full faith and credit, be afforded the same preclusive consequences as would be afforded in California courts. Caldeira v. County of Kauai, 866 F.2d 1175, 1177-78 (9th Cir. 1989); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817 (9th Cir. BAP 2006).

The basic features of California issue preclusion law were restated by the California Supreme Court in <u>Lucido v. Superior Ct.</u>, 51 Cal.3d 335, 341-43 (1990). An additional qualification regarding arbitration was introduced by the state Supreme Court's decision in <u>Vandenberg v. Superior Ct.</u>, 21 Cal.4th 815, 824 (1999). <u>See</u> <u>Khaligh</u>, 338 B.R. at 824.

Six basic elements must be satisfied before a court may exercise its discretion to apply issue preclusion, five of which are "threshold" requirements: (1) identical issue; (2) actually litigated in the former proceeding; (3) necessarily decided in the former proceeding; (4) former decision final and on the merits; and (5) party against whom preclusion sought either the same, or in privity with, party in former proceeding.

The sixth California element is a mandatory "additional" inquiry into whether imposition of issue preclusion would be fair and consistent with sound public policy. <u>Lucido</u>, 51 Cal.3d at 341-43; <u>Khaligh</u>, 338 B.R. at 824. The relevant public policies include preserving integrity of judicial system, of judicial economy, protection of litigants from harassment by vexatious litigation. <u>Lucido</u>, 51 Cal.3d at 341-43; <u>Khaligh</u>, 338 B.R. at 824 n.2.

For arbitrations, the California Supreme Court sharpened the point on the pencil in <u>Vandenberg</u>: "we adopt, for California purposes, that rule that a private arbitration award cannot have <u>nonmutual</u> collateral estoppel [i.e. issue preclusive] effect unless the arbitral parties so agree." <u>Vandenberg</u>, 21 Cal.4th at 836-37 (emphasis supplied).

The Supreme Court explained, whether any arbitration is

1  "fair and consistent with public policy in a particular case

2  depends in part upon the character of the forum that first

3  decided the issue later sought to be foreclosed." Courts consider

4  the "judicial nature of the prior forum, i.e. its legal

5  formality, the scope of its jurisdiction, and its procedural

6  safeguards, particularly including the opportunity for judicial

7  review of adverse rulings." Vandenberg, 21 Cal.4th at 829.

8       In that connection, California courts apply the same

9  standards used to determine whether an administrative proceeding

10  should have issue preclusive effect. See Restatement(Second) of

11  Judgments, §§ 83(2) & 84(3)(b) (1982); Vandenberg, 21 Cal.4th at

12  829 (citing administrative proceedings); Givens v. CBS

13  Broadcasting, Inc., 291 F.3d 1173, 1178 (9th Cir. 2002)

14  (California law).

15       As noted, the JAMS comprehensive arbitration rules are

16  consistent with the standard of Restatement(Second) of Judgments,

17  §§ 83(2) & 84(3)(b).

18       Since the present case is not an instance of nonmutual issue

19  preclusion, the Vandenberg qualification does not apply to this

20  confirmed JAMS arbitration.

21

22                              A

23       Nondischargeable "Actual Fraud" under § 523(a)(2) denotes

24  any fraud that involves moral turpitude or intentional wrong,

25  including deception and trickery that is done with wrongful

26  intent. Thus, it includes fraudulent conveyance schemes and

27  actions that can be effected without false representation, such

28  as by acts of concealment. Husky Int'l Electronics, Inc. v.

_Ritz,_ 136 S.Ct. 1581, 1586-87 (2016); _DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer_, 869 F.3d 839, 842 (9th Cir. 2017).

The record establishes that Deol wrongfully seized the property of Econergy, made unauthorized payments and distributions all without notice to Goel.

This conduct was deceptive.

Deol engaged in multiple affirmative acts to conceal his unauthorized payments and distributions.

Deol filed false tax returns reflecting he was sole shareholder of Econergy.

Deol transferred Econergy funds to his own account.

Deol refused to provide information to Goel and GFV regarding his actions and refused to provide information.

These actions demonstrate that Deol knew that what he was doing was wrongful.

These same actions establish intention by Deol to deceive and to defraud.

According to the arbitrator:

> "Deol summarily fired Econergy's accountant, Vijay Goel, C.A., in May of 2013, and took the corporation's accounting work to his own accountant, Neelkant Gargya of Sanjay Arora, C.A. However, in doing so, he did not tell Gargya about GFV being a co-director and a 49% owner of the corporation, or of Goel's loan of nearly $1M to Econergy. Rather, Deol told Gargya that he was the sole shareholder. As such, Gargya filed an Indian 2012 tax return (for the fiscal year ending March 31, 2012) that made no mention of Goel or GFV. Gargya testified in his deposition that Deol never told him of the existence of Goel or GFV or the loan."

Further Partial Final Award at 23-24.

Deol's concealment of his activities lulled the Goel parties into proceeding on the assumption that all was well. Their reliance was justifiable reliance within the meaning of that

concept.

Damages, measured by the JAMS arbitration award were incurred in as a result of Deol's fraud.

As the JAMS arbitrator noted regarding Deol's secret withdrawals, he "considers Deol's conduct with regard to these distributions as primarily tortious." Hence, he concluded Civil Code 3288 applied to permit an award of interest and cited Nordahl v. Franzalla, 48 Cal. App. 3d 657, 665 (1975): "when, by virtue of fraud or breach of fiduciary duty of the defendant plaintiff has been deprived of the use of his money or property and is obligated to resort to litigation to recover it, the inclusion of interest in the award is necessary in order to make the plaintiff whole." Order on Attorneys' Fees at 11-12.

In short, this Court exercises its discretion to impose issue preclusion against Deol on the issue of Actual Fraud under § 523(a)(2).


                                    B

Nondischargeable Defalcation while Acting in Fiduciary Capacity under § 523(a)(4) was also alleged in the Complaint.

The JAMS arbitrator ruled that Deol engaged in actions that violated his fiduciary duties to Goel and to Econergy:

> Subsequent to his takeover, and except when challenged by Goel's attorneys or ordered by the undersigned [arbitrator], Deol appears to have continued to treat Econergy as a solely owned business and his personal funding source" and Deol "has moved Econergy funds to other bank accounts within his exclusive control, both in India and the U.S., and in the past has transferred Econergy's money to one or more of his other solar ventures.

Further Partial Final Award at 48.

Similarly,

1    the amount Deol took out of Econergy's Indian bank accounts
     and out of repatriated funds was clearly known to him; he
2    was the one making the withdrawals. He also knew that those
     withdrawals were done without the co-owner's involvement or
3    consent. Deol also knew that GFV was a 49% owner of
     Econergy, and entitled to 49% of any distributions made by
4    the corporation to its shareholders.

5    Order on Attorneys' Fees at 11.

6        This constitutes Defalcation while Acting in Fiduciary

7    Capacity within the meaning of § 523(a)(4).

8        In short, this Court exercises its discretion to impose

9    issue preclusion against Deol on the issue of Defalcation While

10   Acting in Fiduciary Capacity under § 523(a)(4).

11

12                                 C

13       Nondischargeable Embezzlement or Larceny under § 523(a)(4)

14   is also alleged in the Complaint.

15       The JAMS arbitrator ruled that

16       Subsequent to his takeover, and except when challenged by
         Goel's attorneys or ordered by the undersigned Deol appears
17       to have continued to treat Econergy as a solely owned
         business and his personal funding source" and Deol "has
18       moved Econergy funds to other bank accounts within his
         exclusive control, both in India and the U.S., and in the
19       past has transferred Econergy's money to one or more of his
         other solar ventures.

20

21   Further Partial Final Award at 48.

22       Similarly,

23       the amount Deol took out of Econergy's Indian bank accounts
         and out of repatriated funds was clearly known to him; he
24       was the one making the withdrawals. He also knew that those
         withdrawals were done without the co-owner's involvement or
25       consent. Deol also knew that GFV was a 49% owner of
         Econergy, and entitled to 49% of any distributions made by
26       the corporation to its shareholders.

27   Order on Attorneys Fees at 11.

28       This adds up to Embezzlement or Larceny. Deol lawfully had

     control over Econergy funds and misappropriated them to his

personal use in violation of the rights of Econergy.

In short, this Court exercises its discretion to impose issue preclusion against Deol on the issue of Embezzlement or Larceny under § 523(a)(4).

III

Nondischargeable Willful and Malicious Injury under § 523(a)(6) was added to the Complaint as a fourth count at the close of the Plaintiffs' case pursuant to Civil Rule 15(b)(2) on the basis that the issue was tried by implied consent. Fed. R. Civ. P. 15(b)(2), incorporated by Fed. R. Bankr. P. 7015.

The evidence of Deol's willfulness and malice consists primarily of his contemptuous defiance of injunctive relief ordered by the arbitrator.

As set forth in the Further Partial Final Award of April 30, 2018:

> The June 21, 2017, Partial Final Award ordered Deol to perform on the personal guarantee he had given to Goel as part of the Loan Agreement. Although Deol was already in default on this guarantee by the time of the June 21, 2017, Partial Final Award, that Award gave him an additional thirty days to perform on his guarantee.
> Deol, however, refused to make the monetary payment, and thus the undersigned ordered Deol to turn over to Goel the property he had pledged as part of that guarantee (his shares in Econergy and his land underlying the Econergy solar farm).
> Deol has not complied with the August 16, 2017, orders and has also pursued litigation in India, on behalf of both Econergy and himself, seeking to relitigate the matters arbitrated and ruled upon in this proceeding.
> As a result, the undersigned has issued subsequent and more specific orders requiring Deol to comply with his obligations in this matter (including turning over to Goel the operations of the solar plant and the land thereunder), and to refrain from attempting to collaterally attack the rulings herein by way of legal action in India.
> As of the writing of this Further Partial Final Award, Deol has not fully complied with the above-described orders. Enforcement through the courts appears needed.

Further Partial Final Award at 65.

Deol's course of contemptuous disdain of the arbitration award continued once he commenced his bankruptcy case.

On multiple occasions, evidence was presented in this Bankruptcy Court that Deol had caused surrogates in India to pursue civil and criminal litigation in the nature of collateral attacks on the arbitration award.

Deol's course of conduct before and after the filing of this case was "willful" for purposes of § 523(a)(6) and inflicted "deliberate or intentional injury" in the form of inflicting additional expense on Goel and undermining respect for the judicial system by way of his collateral attacks. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).

This Court finds as fact that Deol had a subjective intent to inflict the injury. Deol knew or should have known that the injury was substantially certain to occur as a result of his strategy of collateral attack in India. Ormsby v. First American (In re Ormsby), 591 F.3d 1199, 1207 (9th Cir. 2010); Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001).

This Court finds as fact and law that Deol's conduct constituted "malicious injury." His acts were wrongful, done intentionally, necessarily caused injury, and were done without just cause or excuse. Carillo v. Su (In re Su), 290 F.3d 1140, 1146-47; Jercich, 238 F.3d at 1209.

Intentional torts fall within the ambit of § 523(a)(6). The JAMS arbitrator noted, "The undersigned considers Deol's conduct with regard to these distributions as primarily tortious." Order on Attorneys' Fees at 11. The aggressive foreign collateral

attack strategy being pursued by Deol was essentially tortious, as well as contemptuous. <u>Lockerby v. Sierra</u>, 535 F.3d 1038 (9th Cir. 2008).

It is also relevant that the public policy considerations entailed in California's mandatory "additional" considerations regarding whether imposing issue preclusion would be fair and consistent with sound public policy – i.e., preserving integrity of judicial system, of judicial economy, protection of litigants from harassment by vexatious litigation – all apply to condemn Deol's strategy of resistance and collateral attack in India.

Actions that offend the integrity of the judicial system, that offend judicial economy, and that constitute harassment by vexatious litigation may, as here, qualify as "willful and malicious" pursuant to § 523(a)(6). Deol is culpable on all three counts.

Hence, as an adequate, independent basis for a judgment of nondischargeability, Deol's debts to Goel and GFV are excepted from discharge pursuant to § 523(a)(6).

## Conclusion

The count in the Complaint seeking declaratory judgment will be DISMISSED AS MOOT.

Judgment will be entered on all other counts determining the debts Defendant Jaspal Deol to Plaintiffs Prabhakar Goel and Goel Family Ventures I LP determined in JAMS Arbitration Case No. 1110016365 are excepted from discharge pursuant to adequate, independent theories of: 11 U.S.C. § 523(a)(2)(A) Actual fraud; 11 U.S.C. § 523(a)(4) Fraud or Defalcation While Acting in

Fiduciary Capacity; 11 U.S.C. § 523(a)(4) Embezzlement or Larceny; 11 U.S.C. § 523(a)(6) Willful and Malicious Injury by the Debtor to Another Entity or to the Property of Another Entity.

    This Memorandum contains findings of fact and conclusions of law.

    An appropriate Judgment shall be entered in a separate document.

Dated: October 16, 2024

_____

United States Bankruptcy Judge